297 F.2d 805
 132 U.S.P.Q. 25
 DAIRY FOODS INCORPORATED, Plaintiff-Appellee,
v.
DAIRY MAID PRODUCTS COOPERATIVE, Defendant Appellant, v.
CARNATION COMPANY, a corporation, Foremost Dairies, Inc., a
corporation, and Pet Milk Cimpany, a corporation, Counter
Defendants Appellees (two cases).
 Nos. 13338, 13421.
 United States Court of Appeals Seventh Circuit.
 Dec. 18, 1961.
 
 Leon E. Isaksen, Madison, Wis., Melville C. Williams, Chicago, Ill., Joseph G. Werner, Madison, Wis., Orr, Isaksen, Werner & Lathrop, Madison, Wis., Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., of counsel, for appellant.
 James P. Hume, Chicago, Ill., Julian O. von Kalinowski, Los Angeles, Cal., Wayne D. Hudson, San Francisco, Cal., Byron, Hume, Groen & Clement, Chicago, Ill., Gibson, Dunn & Crutcher, Los Angeles, Cal., of counsel, for appellees.
 Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 Dairy Foods Incorporated, plaintiff-appellee, brought suit in the District Court against Dairy Maid Products Cooperative, defenant appellant, for infringement of a patent. Defendant's answer raises issues of validity and infringement of the patent, alleges misuse of the patent in furtherance of a conspiracy in violation of the antitrust laws,[1] and asserts two counterclaims. The first counterclaim seeks a declaratory judgment against the plaintiff as to the validity and infringement of the patent. As amended second counterclaim against plaintiff and additional counter defendants, Carnation Company and Foremost Dairies, Inc.,[2] seeks recovery of treble damages pursuant to Section 4 of the Clayton Act[3] and injunctive relief under Section 16 of that Act.[4] Dairy Foods, Carnation and Foremost made substantially identical motions to dismiss the amended second counterclaim, Carnation and Foremost moving, in addition, that the order making them defendants to the counterclaim be vacated. The motions to dismiss the amended second counterclaim assert failure of the counterclaim to state a claim upon which relief can be granted and consequent lack of jurisdiction of the subject matter. These assertions are grounded on contentions that the counterclaim fails to allege facts sufficient to show injury to defendant's business or property as the result of federal antitrust violations and is premature in that it states no accrued claim. The District Court granted these motions. A judgment order was entered was entered dismissing the amended second counterclaim, vacating the order making Carnation and Foremost counter defendants, and containing a determination by the District Court that no just reason for delaying entry of the judgment existed.[5] Defendant's appeal in No. 13338 is from that part of the judgment order dismissing its amended second counterclaim and vacating the order making Carnation and Foremost counter defendants.
 
 
 2
 After defendant filed its notice of appeal in No. 13338 the District Court, on motion of the plaintiff, entered an order, subsequent to the filing of the record and docketing of the case in this Court, that its judgment order be 'corrected' by adding that:
 
 
 3
 'The Court releases for appeal only its dismissal of the amended second counterclaim and reserves and retains its jurisdiction to proceed with all other claims and issues involved in this action.'
 
 
 4
 The order further directed that a separate trial be first had limited to the issues of validity, scope and infringement of the patent; that discovery limited to those issues proceed; and that defendant produce certain of its officers and agents for the purpose of depositions by plaintiff. A motion by plaintiff, made in this Court, that the order entered to correct the judgment order be included in the record in No. 13338, was taken with the case. Defendant's appeal No. 13421 is from the order entered by the District Court after the notice of appeal in No. 13338 was filed.[6]
 
 
 5
 The two appeals have not been consolidated, except for the purpose of oral argument, but to avoid unnecessary repetition we elect to dispose of both in this opinion.
 
 
 6
 The counterclaim in qiestion contains allegations which if proved are adequate to establish that plaintiff, Carnation and Foremost are engaged in a combination and conspiracy in unreasonable restraint of and to monopolize trade and commerce in instant milk and instant milk products in violation of Sections 1 and 2 of the Sherman Act through the pooling of patents and patent applications pertaining to instant milk and instant milk products, including Peebles Patent No. 2,835,586,[7] and using the patents in the pool in a manner and with objectives which violate the Sherman Act.
 
 
 7
 The contested issue which emerges from defendant's appeal in No. 13338 is whether the counterclaim alleges an injury to defendant's business or property requisite to state a claim upon which relief can be granted under the provisions of Sections 4 and 16 of the Clayton Act.[8]
 
 
 8
 In appraising the sufficiency of the counterclaim, as tested by the issue presented, the following allegations become pertinent:
 
 
 9
 '35. As a proximate result and effect of said combination and conspiracy and of the acts of said named co-conspirators in furtherance thereof:
 
 
 10
 '(b) Defendant and other smaller producers of instant milk and instant milk products have been and are threatened with loss and damage. They are faced with choosing between the three alternatives of ceasing production of instant milk, defending expensive patent litigation if they refuse to accept plaintiff's proffered license, or accepting a discriminatory and restrictive license under patents in plaintiff's pool that deprives them of an equal opportunity to compete with Carnation and Foremost and that will increase their costs of production.
 
 
 11
 '(c) Defendant has been injured in its business and property as the proximate result of said acts of Carnation, Foremost and Plaintiff in frutherance of said violation of said antitrust laws, which injury is continuing, and includes:
 
 
 12
 '(1) Defendant has been, and will be, forced to make expenditures of money and to use the time of its officers and employees to defend said patent infringement suit. Said injury to date is substantial.
 
 
 13
 '(2) Defendant has been forced by the threat of suit to expend a substantial amount of money before the filing of the infringement suit to investigate the scope and validity of plaintiff's atents.'
 
 
 14
 In our opinion these allegations adequately set forth an injury to defendant in its business or property. The injury is the necessity that defendant make a choice among alternatives each of which has an adverse economic or financial impact on its instant milk business. It was allegedly compelled either to cease production with consequent loss of sales of the product, pay tribute with consequent increase in production cost, or incur the financial burden of expenses incident to the defense of litigation. Each of these alternatives had its particular adverse economic or financial effect on defendant's instant milk business. To place a person in such a situation is an injury to his business. True, it is the defendant's choice which determines the nature of the resulting damages but it is the necessity of having to choose from such alternatives that is the injury. The congressional enactments here involved were designed to afford a legal right to engage in business free from conspiratorial compulsion such as here alleged. A violation of that right is a legal injury to the business adversely affected. Section 4 of the Clayton Act by its reference to the person 'injured' recognizes that ti is the 'injury' which gives rise to the consequent liability to respond in threefold 'damages'.
 
 
 15
 The counterclaim must be considered as a whole. The allegations of paragraph 35 are to be evaluated in the context of those which set forth the antitrust law violations. And they are to be considered in combination with the allegations that one of the elements of the conspiracy was an agreement that patent infringement suits would be threatened and filed to coerce the acceptance of licenses which would effectuate the conspiracy and that plaintiff by threats of an infringement suit attempted to coerce defendant to accept a discriminatory and restrictive license under the patent pool. When so considered and appraised it becomes apparent that the alleged necessity of choice set forth in paragraph 35 coupled with the assertion therein that defendant 'has been injured in its busines and property as the proximate result of said acts of Carnation, Foremost and Plaintiff in furtherance of said violation of said antitrust laws' constitutes a sufficient allegation of injury to business or property under the controlling principles of notice pleading authorized by the Federal Rules of Civil Procedure as interpreted and applied in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; United States v. Employing Plasterers Association, 347 U.S. 186, 74 S.Ct. 452, 456, 98 L.Ed. 618; Central Ice Cream Company v. Golden Rod Ice Cream Company, 7 Cir. 257 F.2d 417; Sandidge v. Rogers, 7 Cir., 256 F.2d 269. And the necessity of choice, which constitutes the injury, was allegedly generated by the asserted combination and conspiracy in unreasonable restraint of and to monopolize commerce and allegedly resulted from acts of plaintiff and the counter defendants designedly in furtherance of such combination and conspiracy.
 
 
 16
 Where an infringement suit is brought as part of and in furtherance of a combination and conspiracy which violates the antitrust laws and results in injury such as is here alleged the person injured may recover threefold the damages he sustains. Clapper v. Original Tractor Cab Company, 7 Cir., 270 F.2d 616; Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, 424-425. And each of these cases is authority for the recovery of threefold the cost and expense of defending such an infringement suit.
 
 
 17
 We are not persuaded by plaintiff's contention that the counterclaim is premature and therefore fails to state a claim upon which relief can be granted. The injury to defendant's business or property occurred when plaintiff filed the infringement suit the compulsion which forced the choice. Defendant's right of action, asserted by its counterclaim, then accrued. Emich Motors Corporation v. General Motors Corporation, 7 Cir.,229 F.2d 714. The fact that the damages sought include costs and expenses yet to accrue at the time the counterclaim was filed, as well as expenditures already made to defend the patent infringement suit, does not make the counterclaim premature. Lawlor v. Loewe, 235 U.S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341. The threefold damages here claimed are not dependent or contingent upon the outcome of plaintiff's action and plaintiff's attempted analogy to a counterclaim for malicious abuse of process consisting of the bringing of the case in chief is inappropriate. The doctrine of Shwab v. Doelz, 7 Cir., 229 F.2d 749, and similar cases, is not applicable here. A prior adjudication that claimed patent rights are unenforceable is not an element prerequisite to the maintenance of an antitrust action for damages or injunctive relief based on misuse of the patent. And there is no justification for applying a different rule merely because the antitrust action is asserteed in the form of a counterclaim in an infringement suit where the misuse is pleaded as an affirmative defense. There is no reason why assertion of the misuse defense should be conditioned upon renunciation of the right to maintain a counterclaim predicated upon the same factors upon which the alleged misuse is based. And where, as here, the right of action alleged by counterclaim has accrued it is ripe for assertion and not barred because relied upon as a defense to the plaintiff's action. The defendant is not required to await a successful adjudication of the of the misuse defense before asserting its counterclaim. We find no merit in the contention that the counterclaim is premature and cannot be maintained because defendant has pleaded misuse of the patent, based on the alleged conspiracy and acts in furtherance thereof, as a defense to the infringement suit. The argument that the counterclaim is premature because if plaintiff prevails in its infringement suit the basis of the alleged misuse defense will have been adjudicated adversely to the defendant begs the question. And, that such misuse, if proved, would bar relief to plaintiff would not preclude defendant from recovery of damages it sustained by reason of the same conduct. Moreover, the misuse defense does not reach or afford a remedy against the claimed continued threat of injury and damage from the alleged conspiratorial activities of Carnation and Foremost. It is no bar to the injunctive relief sought.
 
 
 18
 In view of te position we have adopted with respect to the issues discussed we do not find it necessary to comment in detail on other arguments advanced nor to make specific reference to the cases cited and analyzed in connection with such contentions. We have, however, considered each of the arguments advanced by the parties in support of their respective positions and the authorities relied upon in support thereof.
 
 
 19
 We conclude that the amended second counterclaim stated a claim upon which relief can be granted pursuant to Sections 4 and 16 of the Clayton Act. The District Court erred in granting the motion to dismiss and entering the judgment order of dismissal.
 
 
 20
 The order entered after the notice of appeal was filed, the record lodged, and appeal docketed in this Court, does not purport to make any change in the portion of the judgment order which was the subject of defendant's appeal-- the dismissal of the amended second counterclaim and vacation of the order making Carnation and Foremost counter-defendants. It did not purport to affect the subject matter of the appeal in No. 13338 and is of no import to any issue presented by that appeal. It is not material to a consideration of the appeal. The motion of the plaintiff to make such order a part of the record on appeal in No. 13338 is therefore denied.
 
 
 21
 In appeal No. 13338 the judgment order of dismissal of the amended second counterclaim and of vacation of the order making Carnation Company and Foremost Dairies, Inc. defendants to the amended second counterclaim is reversed and the cause is remanded to the District Court with directions to reinstate Carnation Company and Foremost Dairies, Inc. as counter defendants, to overrule the motions to dismiss the amended second counterclaim, to require Dairy Foods Incorporated to reply to said counterclaim and Carnation Company and Foremost Dairies, Inc. to answer same, and for further proceedings not inconsistent with the views herein expressed.
 
 
 22
 In its appeal in No. 13421 the defendant asserts that the District Coirt was without jurisdiction ot enter the order it did. The defendant contends that after the notice of appeal was filed the District Court was without jurisdiction to enter such an order. But apart from consideration of that issue it is apparent that the order is not a final appealable order. The retention of continuing jurisdiction asserted by the order can be tested by appeal only if an exercise of the claimed juridsiction culminates in the entry of a judgment or order which is apealable. The appeal in No. 13421 is therefore dismissed.
 
 
 23
 No. 13338 Reversed and remanded with directions.
 
 
 24
 No. 13421 Appeal dismissed.
 
 
 25
 SCHNACKENBERG, Circuit Judge (concurring).
 
 
 26
 Judge CASTLE's opinion recognizes that it was essential that defendant Dairy Maid Products Cooperative allege in its amended second counterclaim an injury to its business or property, and the opinion refers to that defendant's allegation that it was compelled either to cease production with consequent loss of sales of its product, pay tribute, or incur the financial burden of expenses incident to the defense of litigation, and holds that, to place a person in such a situation is an injury to his business, which, under 4 of the Clayton Act, gives rise to a liability to respond in three-fold damages.
 
 
 27
 No citation of any statutory authority has been made to show that the financial burden of the expenses of defense of litigation has been treated by the courts as damages to be recovered, other than court costs and attorneys' fees. Moreover, the common-law rule is well-settled that, with the exceptions of costs and attorneys' fees, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation. This rule has been repeatedly recognized in the federal courts, 25 C.J.S. Damages 50, p. 532. Actually the only matters pleaded in the counterclaim to show injury are this defendant's expenses in defending itself in this case brought by plaintiff and in investigating plaintiff's patent. These do not appear to me to constitute such injury in business or property sustained by defendant as will support the counterclaim charge of an antitrust violation.
 
 
 28
 Despite this impression, I do not feel willing to dissent from that part of Judge Castle's opinion. The law on this subject, as on any other, is not static. In view of the treatment of antitrust cases by the United States Supreme Court, and with a realization that this precise narrow question has not been presented to it, I concur in the opinion of Judge Castle, believing that no injustice will be done the litigants by refusing to affirm, on this narrow ground of injury, the dismissal of the counterclaim of Dairy Maid Products Cooperative.
 
 
 
 [1]
 Sections 1 and 2 of the Sherman Act. 15 U.S.C.A. 1 and 2
 
 
 [2]
 Pet Milk Company, originally named as an additional counter defendant, was later dismissed on defendant's motion
 
 
 [3]
 15 U.S.C.A. 15
 
 
 [4]
 15 U.S.C.A. 26
 
 
 [5]
 The judgment order recites that such determination was made in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A
 
 
 [6]
 The notice of appeal in No. 13421 states, in addition, that the appeal is also from the judgment the order 'purports to modify as purportedly modified.'
 
 
 [7]
 Plaintiff brought its infringement suit against defendant as owner of Peebles Patent No. 2,835,586 for Dried Milk Product and Method of Making Same
 
 
 [8]
 Section 4 of the Clayton Act (15 U.S.C.A. 15) provides: 'Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee
 Section 16 of the Clayton Act (15 U.S.C.A. 26), insofar as here pertinent, provides: 'Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or lamage by a violation of the antitrust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, * * *.'